IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ARVEL JERMAINE WESLEY   # 24308-018**                                              **PLAINTIFF**

**VERSUS**                                              **CIVIL ACTION NO. 3:15cv598-TSL-RHW**

**UNITED STATES OF AMERICA and
LIEUTENANT HENDERSON**                                              **DEFENDANTS**

## REPORT AND RECOMMENDATION

Before the Court is [27] Defendants' June 6, 2016 motion to dismiss or alternatively for summary judgment on the *pro se* prisoner Plaintiff's claims in this case arising from an incident which occurred August 6, 2012. Defendants urge dismissal of Plaintiff's Federal Tort Claims Act (FTCA) negligence claim for lack of subject matter jurisdiction, and dismissal or summary judgment on his *Bivens*[1] claim against Lieutenant Henderson on grounds that Plaintiff failed to serve process on Henderson, failed to exhaust administrative remedies, failed to state a claim on which relief can be granted, and/or on grounds of qualified immunity. Wesley filed no response to the motion. In fact, he has filed nothing in this case since April 19, 2016.

### Facts and Procedural History

Arvel Jermaine Wesley is a federal inmate serving a 70-month sentence with three years supervised release for a conviction of armed bank robbery. His release date is April 14, 2017. [26-1] Wesley's complaint, which was received and filed by the Clerk on August 18, 2015, alleges he was assaulted by a fellow inmate while he was incarcerated at the Federal Correctional Complex in Yazoo City, Mississippi. By the time he filed this lawsuit, Wesley was imprisoned at the Federal Correctional Institution at Edgefield, South Carolina. [1-1]

---

[1] *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Wesley alleges that on August 6, 2012, he and inmates Dawes, Ostipow and Johnson were handcuffed and taken to the Special Housing Unit (SHU) recreation cages. After they were placed in a cage, an officer began removing their handcuffs, starting with inmate Dawes. As soon as Dawes' handcuffs were removed, he began hitting Wesley, who was still handcuffed. [1, ¶¶ 6-9] It is undisputed that some officer activated a body alarm which brought other officers (including Lt. Henderson) to the area, but no one immediately opened or entered the cage to stop the assault. Wesley heard someone telling Dawes to stop, and other witnesses identify Henderson as the one who told Dawes to stop. Dawes stopped and was again placed in restraints. Wesley contends Dawes stopped hitting him only after he grew tired. [1, pp. 3, 12, 14, 17] Wesley attached to his complaint affidavits of the other two inmates who were in the cage with him when the assault occurred; inmate Ostipow estimated the assault lasted just over a minute or perhaps less, and inmate Johnson stated it lasted one and one-half minutes or less. [1, pp. 14-17]

Wesley was taken to the medical department immediately following the incident, as reflected in prison medical records attached as an exhibit to his complaint. According to these records, Wesley stated a "dude just walked up and started hitting me." Wesley reported no symptoms and examination showed he had a scratch to his left thumb, and abrasions to his right elbow, to his left arm below the elbow, and to both knees, with no other injuries noted. [1, pp. 20-22] Eight hours later, Wesley received additional medical attention when he complained of a headache from having hit his head on the ground. Medical personnel found he had a "small raised firm area to right temporal area of scalp, no bruising, no open area, complaint of mild tenderness on palpation of area." Wesley was given medication, and he denied any further pain or symptoms. [1, pp. 23-26] Wesley stated he has been diagnosed with post-traumatic stress syndrome [1, ¶ 21], and attached to his complaint psychological treatment records. [1, pp. 27-36]

Wesley contends the United States is liable to him under the FTCA because Bureau of Prisons (BOP) staff did not act quickly enough to stop the assault. Specifically, he alleges they failed to "exercise reasonable or ordinary care by opening the recreation cage and using force to cease the assault." [1, ¶¶ 10-11] Wesley states this "constituted negligence resulting in a tort of assault and battery." [1, ¶ 23] His *Bivens* claims assert Henderson violated his Eighth Amendment rights by failing to protect him from inmate Dawes, and his First Amendment rights by coercing him into withdrawing Administrative Remedy ID number 703321-F1. Wesley alleges Henderson threatened to kick Wesley's a** and spit in his food trays if he did not drop the administrative remedy request. [1, ¶¶ 13-17] Wesley claims Henderson's actions made him "afraid to pursue and exhaust [his] Administrative Remedy Request, which is a prerequisite for obtaining access to the court" and constitutes a violation of his First Amendment rights. [1, ¶ 24]

Wesley filed Administrative Remedy ID 703321-F1 on August 19, 2012, giving the same account of the assault, complaining the officers' failure to open the cage and use force to stop Dawes violated BOP policy/procedure, and stating he wished to resolve the matter as follows:

> 1) That all staff present, and in error, during the assault be made aware of how their response was inadequate and contrary to policy. Subsequently advise and instruct said staff how to handle such situations; and 2) There be new procedures set in place to ensure that this type of failure to protect a handcuffed inmate will not transpire again; *and 3) Said staff members be held accountable under the Standards of Employee Conduct.*

[1, pp. 18-19], [26-3] The italicized portion of the above quote appears only in Wesley's reconstructed second page of his remedy [1, p.19]; it is not included in the BOP file for Remedy ID 703321. [26-3, p. 5] The BOP file for this Remedy contains an August 23, 2012 "Request for Administrative Remedy Attempt at Informal Resolution," bearing a handwritten notation "(SIS)"

repeating the same facts,[2] which was "forwarded to the appropriate department, for further investigation of staff conduct during the allege (*sic*) assault." [26-3, p. 7]  On September 14, 2012, Wesley signed a document stating he had resolved the matter of the August 6, 2012 and was voluntarily withdrawing the remedy.  [26-3, p. 3]

Analysis

**Plaintiff's negligence claims:**

As a sovereign, the United States is immune from suit except to the extent it has consented to be sued.  *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *Costigan v. United States*, 2007 WL 1655269, at *3 (W.D. Wash. June 7, 2007).  The FTCA provides a limited waiver of sovereign immunity from suit and authorizes civil actions for claims for personal injury caused by negligent or wrongful acts or omissions of federal employees while acting within the scope of their office or employment.  28 U.S.C. § 1346(b)(1); *King v. United States*, 901 F.Supp.2d 781, 788 (S.D. Miss. 2012); *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003).  Wesley asserted jurisdiction under the FTCA.  On Defendants' motion to dismiss under Rule 12(b)(1), it was Wesley's burden to prove "an unequivocal waiver of sovereign immunity and the existence of subject matter jurisdiction."  *Rich v. United States*, 2014 WL 2778652, at *4 (N.D. W.Va. June 19, 2014) (quoting *LeRose v. United States,* 285 Fed. Appx. 93, 96 (4th Cir. 2008)), *aff'd in part, vacated in part, and remanded*, 811 F.3d 140 (4th Cir. 2015).  The FTCA expressly provides that sovereign immunity is not waived for any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a); *Lineberry v. United States*, 2009 WL 763052, at *5 (N.D. Tex.

---

[2] Wesley says Special Investigation Supervisor Lt. Samuels interviewed him September 17, 2012, and he signed an affidavit Samuels prepared outlining the events which had occurred.  [1, p. 5]

March 23, 2009). Defendants contend Wesley's negligence claims fall within this exception to the FTCA, and deprive the Court of subject matter jurisdiction over those claims.

To determine applicability of the discretionary function exception, the Court examines first whether the challenged act/omission involved an element of judgment or choice, *i.e.*, that there was room for choice in making the decision; and second, whether the judgment or choice of the kind which the exception was designed to shield. *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991); *Ashford v. United States*, 511 F.3d 501, 505 (5th Cir. 2007). If a "federal statute, regulation or policy" specifically prescribes a course of action for the federal employee to follow, the employee has no choice but to adhere to the directive, and the exception will not apply. *Gaubert*, 499 U.S. at 322. The exception protects only governmental actions/decisions based on considerations of public policy. *Id.*, 499 U.S. at 323. Wesley alleges that when Dawes began hitting him, BOP staff were required to immediately open the recreation cage and use force to stop him. He cites only a statement from commentary to the BOP program statement regarding officers' use of force, rather than the federal regulations governing BOP staff's use of force. The undersigned finds the language of the regulations leaves discretion with BOP employees in dealing with situations such as the inmate altercation in the recreation cage in this case. For example, 28 C.F.R. § 552.20 "authorizes staff to use force only as a last alternative after all other *reasonable* efforts to resolve a situation have failed;" and § 552.21 provides staff "*may* immediately use force... when the behavior... constitutes an *immediate*, *serious threat* to... others or to institution security and good order." (Emphasis added) As for the second prong of the discretionary function test, whether the judgment is of the kind the exception was designed to shield:

> Courts have held that the decision of how to protect an inmate from an assault from another inmate is the type of decision the discretionary function exception is

> designed to shield. *Whitley v. Albers.* 475 U.S. 312, 321–322 (1986) (citing *Rhodes v. Chapman,* 452 U.S. 337, 349 n. 14 (1981)); *Byrd,* 2010 WL 4922519, *5; *see Alfrey v. United States,* 276 F.3d 557, 564 (9th Cir.2002). Moreover, circuit courts, generally, have held that FTCA actions filed by federal inmates for injuries caused by fellow inmates are barred by the discretionary function exception. *See Alfrey,* 276 F.3d at 565 (applying discretionary function exception where BOP officials decided not to relocate inmate in face of death threats by his cell mate and inmate subsequently was killed); *Cohen v. United States,* 151 F.3d 1338, 1342–43 (11th Cir.1998); *Dykstra v. United States Bureau of Prisons,* 140 F.3d 791 (8th Cir.1998) (discretionary function exception applied to bar suit for prison officials' failure to warn plaintiff that his youthful appearance may make him vulnerable to attack or to place him in protective custody when plaintiff complained that fellow inmate was staring at him); *see also McGhee v. United States,* No. 09–CT–3192–BO, 2011 WL 474413, *5–6 (E.D.N.C. Feb. 4, 2011).

*Norris v. United States*, 2013 WL 756293, at *5 (E.D.N.C. Feb. 28, 2013).  In *Norris*, the plaintiff argued prison staff were negligent in waiting until they saw blood before intervening when a fellow inmate assaulted plaintiff.  The Court stated:

> ... to the extent the officers delayed in responding to the altercation between plaintiff and inmate Harvey, such delay is consistent with the BOP's regulations regarding the use of force. *There is no requirement that an officer immediately intervene in an altercation among inmates. Instead, officers are permitted the discretion to determine the appropriate moment to intervene in consideration of their own safety, the safety of other inmates, and the restoration of order. This discretion furthers the public policy considerations behind the BOP regulations governing the use of force.* Based upon the foregoing, the court finds that both prongs of the discretionary function test are satisfied, and that the discretionary function exception applies to this claim.

*Id*., 2013 WL 756293, at *6 (emphasis added).  The undersigned finds Henderson's declaration provides additional support for holding the actions of the officers in Wesley's case consistent with BOP regulations regarding use of force.  Among other things, Henderson stated:

> Bureau staff are trained to wait for enough responding staff to arrive to an ... inmate-on-inmate assault so that the situation can be safely contained...
>
> SHU officer's Post Orders prohibit immediately opening a recreation cage when a fight or assault is in progress.
> SHU Post Orders state that first responders to a disturbance will not open cell or recreation cage doors until a minimum ratio of one staff to one inmate is present.

> ... even when the sufficient number of staff is present to respond, a verbal order to cease the fight or assault must first be given before anyone enters the area where the assault is occurring.
>
> ... officers have to determine whether they can safely and sufficiently contain the disturbance if other inmates nearby become involved.

[26-5, ¶¶ 5-6, 8-9]

Because waivers of sovereign immunity are strictly construed in favor of the sovereign, it was Wesley's burden to show the discretionary function exception does not apply. *Welch v. United States*, 409 F.3d 646, 650-51 (4th Cir. 2005). Wesley has not met that burden. The undersigned finds the discretionary function exception applies to this case, and Wesley's negligence claims must be dismissed for lack of subject matter jurisdiction.

**Service of process on Henderson:**

Defendants urge the Court to dismiss this case as to Lieutenant Henderson for Plaintiff's failure to serve process. Defendants correctly point out that the docket fails to show Henderson has been properly served with a summons and complaint. In fact, the only defendant named in the style of Plaintiff's original complaint was the United States, albeit Wesley did state allegations as to Henderson, beginning with the opening paragraph of the pleading and continuing in Paragraph 5 identifying Henderson as a party "sued in his individual capacity," and Paragraph 11 stating Henderson was one of those who responded after the assault began. Paragraphs 14-16, 18-20 and 24-25 include allegations that Henderson violated Wesley's First Amendment rights by forcing him to withdraw his administrative remedy, and violated his Eighth Amendment rights by allowing him to be placed in a recreation cage with Dawes knowing that Dawes would assault anyone from Florida (Wesley was from Florida).

Henderson was added as a party defendant by Order [15] entered January 20, 2016. Process issued for both defendants the same day. [17] By Order [20] entered March 15, 2016,

the Court informed Wesley that the United States Marshal's Service had advised that Henderson was no longer employed at FCI Yazoo,[3] and instructed Wesley to provide a current address for Henderson by April 13, 2016. The summons issued to Lieutenant Henderson at FCI Yazoo was returned unexecuted bearing the notation "no longer employed at FCI Yazoo..."[4] [22] Wesley responded to Order [20] on April 19, 2016, explaining he had been unable to obtain Henderson's first name or current address where he could be served process because FCI Yazoo declined to release such information to him or his family. Noting the government had recently moved for additional time to answer for both the United States and Henderson [21], Wesley suggested the government was capable of providing Henderson's first name and address so process could be served. This response to Order [20] was the last filing made by Wesley in this case; he never filed a motion or made any other attempt to require the government to provide Henderson's name and/or address. Had he done so, the undersigned is of the opinion he would likely have been granted such relief. Furthermore, the motion presently under consideration was filed on behalf Lt. Henderson as well as the United States. The undersigned will not recommend dismissal on this ground.

**Plaintiff's *Bivens* claims**:

A *Bivens* action is analogous to a civil rights action brought under 28 U.S.C. § 1983, the only difference being that *Bivens* applies to alleged constitutional violations by federal actors rather than state officials. *See Izen v. Catalina*, 398 F.3d 363, 367, n.3 (5th Cir. 2005). "*Bivens* extends the protections afforded by § 1983 to parties injured by federal actors." *Muzzi v. U.S. Government*, 2002 WL 922378, at *1 (E.D. La. May 6, 2002). Defendants' motion seeks

---

[3]The court was required to, and did, order service of process by the U.S. Marshal's Service under FED.R.CIV.P. 4(c)(3) since Wesley had been granted leave to proceed *in forma pauperis*. [14]

[4]The return is dated 1-27-16, but it was not filed with the Court until March 24, 2016. [22]

dismissal or summary judgment on Wesley's claims against Henderson on a number of grounds including failure to exhaust administrative remedies, failure to state a claim, and qualified immunity. Because Defendants have submitted matters outside the pleadings with respect to the *Bivens* claims, that portion of the motion will be considered as one for summary judgment. *See* FED.R.CIV.P. 12(b); *Young v. Biggers*, 938 F.2d 565, 568 (5th Cir. 1991). A motion for summary judgment must be granted "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." FED.R.CIV.P. 56. On a motion for summary judgment, the Court views the evidence and draws reasonable inferences most favorable to the non-moving party. *Abarca v. Metropolitan Transit Authority*, 404 F.3d 938, 940 (5th Cir. 2005). The party who bears the burden of proof at trial also bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries his burden, the non-movant must show by competent evidence that summary judgment should not be granted. *Celotex*, 477 U.S. at 324-325; *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (non-movant "must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.").

The Prison Litigation Reform Act (PLRA) requires a prisoner to exhaust available administrative remedies before asserting constitutional claims against BOP officers in federal court. The Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006)("proper exhaustion of administrative remedies is necessary"); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("the PLRA's

exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"). Merely initiating the grievance process or putting prison officials on notice of a complaint is insufficient to meet the exhaustion requirement – the grievance process must be carried through to its conclusion before suit can be filed. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001); *Woodford*, 548 U.S. at 90-91. Where an inmate has failed to properly exhaust the administrative grievance procedure before filing his complaint, dismissal is appropriate. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

The BOP has a four-step administrative remedies process requiring that an inmate first present an issue of concern informally to staff who shall attempt to informally resolve the issue. 28 C.F.R. § 542.13(a). If informal resolution is unsuccessful, the inmate must submit to the Warden a written Administrative Remedy Request on the appropriate form (BP-9) within 20 days after the date of the occurrence which is the basis for the Request. 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the Warden's response, he has 20 days from the date of the Warden's response to appeal to the Regional Director by filing a BP-10 form. If the inmate is not satisfied with the Regional Director's response, he may appeal to the General Counsel by filing a form BP-11 within 30 days of the Regional Director's response. 28 C.F.R. § 542.15(a). Appeal to the General Counsel is the final step of the administrative process, and exhaustion is not complete until the prisoner's claim has been considered at all levels. *Id.*

Failure to exhaust administrative remedies is an affirmative defense on which Defendants bear the burden of proof. *Alba Randle*, 2011 WL 4565752, at *4 (S.D. Miss. 2011); *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). In support of their motion, Defendants have presented Wesley's administrative remedy history [26-2], his Remedy ID 703321-F1 (the only

administrative remedy request he filed regarding the assault) [26-3], and the sworn Declaration of Stanley Anderson, who is responsible for processing administrative remedy requests filed by inmates at the institutional level. [26-4] These documents establish that Wesley filed no administrative remedy request regarding his First Amendment claim against Lt. Henderson; he failed to pursue through all the necessary steps his administrative Remedy ID 703321-F1 regarding the assault; and he never mentioned or made any allegations against Lt. Henderson in an administrative remedy request. Wesley has never alleged Henderson put him in the recreation cage with Dawes. Henderson's uncontradicted declaration establishes that he did not put any inmates into the SHU recreation cage on August 6, 2012; he was not present when they were put in the cage; and he played no role in deciding to put them in the cage; he was simply the SHU Lieutenant on shift. Supervisory officials are not vicariously liable under *Bivens* for actions of their subordinates. *Murrell v. Chandler*, 277 Fed. Appx. 341, 343 (5th Cir. 2008).

The undersigned finds Defendants met their burden of proving Wesley has not exhausted his administrative remedies, and Wesley has come forward with no competent evidence to show otherwise. His *allegation* that Henderson coerced him to withdraw Remedy ID 703321-F1 is insufficient to excuse him from the exhaustion requirement. Wesley claims he was "afraid to pursue and exhaust [his] Administrative Remedy Request." However, BOP administrative remedy procedures include a procedure for filing a sensitive issue administrative remedy request under such circumstances. 28 C.F.R. § 542.14. The regulation provides:

> (1) Sensitive issues. If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director. The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the Request at the institution. If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination,

>without a return of the Request. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission.

Wesley has offered no excuse for failing to use that available procedure to exhaust his administrative remedies. Inmates are required to "exhaust such administrative remedies as are available, whatever they may be." *Zebrowski v. U.S. Fed. Bureau of Prisons*, 558 Fed. Appx. 355, 360 (5th Cir. 2014) (quoting *Alexander v. Tippah County,* 351 F.3d 626, 630 (5th Cir. 2003)); *Lane v. Harris County Medical Dep't.*, 266 Fed. Appx. 315 (5th Cir. 2008) (the PLRA requires a prisoner to pursue all available avenues of relief and comply with all administrative deadlines and procedural rules). "Exceptions to the exhaustion requirement apply only in 'extraordinary circumstances,'" and the prisoner must demonstrate futility or unavailability of administrative remedies. *Schipke v. Van Buren*, 239 Fed.Appx. 85, 86 (5th Cir. 2007). Wesley has made no such showing. The evidence shows Wesley did not exhaust available administrative remedies with respect to his *Bivens* claims, and he has presented nothing to excuse the failure. The undersigned finds the motion for summary judgment on the *Bivens* claims well-taken, which obviates the need to address Defendants' remaining grounds for summary judgment or dismissal.

## RECOMMENDATION

The undersigned recommends that Wesley's negligence claims under the FTCA be dismissed for lack of subject matter jurisdiction, that the motion for summary judgment be granted on the *Bivens* claims for Plaintiff's failure to exhaust administrative remedies, and that this case be dismissed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

A party has 14 days to serve on the other parties, submit to the assigned District Judge, and file with the clerk of court his written objections to the Report and Recommendation. The

objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Court need not consider frivolous, conclusive, or general objections. An opposing party has seven days after being served with objections, to serve and file a response or to notify the District Judge he does not intend to respond to the objections. Except on grounds of plain error, a party cannot attack on appeal any proposed factual finding or legal conclusion accepted by the District Court to which he did not timely file objections. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed, this the 13th day of February, 2017.

/s/ Robert H. Walker
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE